IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Civil Action No. 3:12-cv-170

JEAN-MARIE BEFORD,                          )
                                            )
                Plaintiff,                  )
                                            )
v.                                          )        **NOTICE OF REMOVAL**
                                            )
COMPASS GROUP USA, INC.                     )
                                            )
                Defendant.                  )
_____)

**EXHIBIT 1**

STATE OF NORTH CAROLINA    FILED    IN THE GENERAL COURT OF JUSTICE

COUNTY OF MECKLENBURG   MAR 12 PM 1:   SUPERIOR COURT DIVISION

11-CVS-16206

| JEAN-MARIE BEFORD, | |
|---|---|
| Plaintiff, | |
| v. | **AMENDED COMPLAINT** |
| COMPASS GROUP USA, INC., | |
| Defendant. | |

Plaintiff Jean-Marie Beford ("Beford") complaining of the Defendant Compass Group USA, Inc. ("Defendant" or "Compass"), alleges as follows:

### PARTIES

1. Plaintiff is a citizen and resident of Clover, York County, South Carolina.

2. Compass is a Delaware corporation with its principal office and place of business in Charlotte, North Carolina.

### JURISDICTION AND VENUE

3. Pursuant to N.C. General Statutes 1-75.4, 1-79, 95-25.22(b), and 29 U.S.C. 216(b) jurisdiction and venue are proper in this Court.

### BACKGROUND

4. Defendant is headquartered in Charlotte, North Carolina, and provides food service management and support services throughout the United States, including North Carolina.

5. Beford worked for Defendant for a combined total of fifteen years, with a break in service approximately seven years ago. Most recently, she was hired by Johnson to work for the Canteen Division of Compass. In or around July 2009, Johnson hired Beford to work for Defendant as a nonexempt, hourly kitchen employee solely in North

1

Carolina. Upon information and belief, Johnson was the Area District Manager for the Canteen Division of Compass.

6. Upon information and belief, Johnson's decision to hire Beford was approved by some or all of Mangiafico, Regional Manager for Canteen, Tim Bailey, Vice President of Canteen, and Dennis Hogan, CEO of Canteen. Upon information and belief, Hogan, Bailey, Mangiafico, and Johnson made decisions related to food related concepts and plans, which were then implemented throughout the various locations of the Canteen Division of Compass.

7. At all times after Johnson rehired Beford to work for Defendant, upon information and belief, Johnson and Mangiafico made all decisions related to the terms and conditions of Beford's employment, including her exempt/nonexempt status and the amount of her compensation, with input from Bailey and Hogan.

8. Beford went to work for Defendant in or around July 2009 in an hourly kitchen position making $14.36 per hour.

9. Since that time, Beford performed manual labor for Defendant in the Freightliner kitchen in Gastonia, North Carolina (the "Freightliner kitchen"). She did preparatory work and cooking to serve three meals per day, five days per week, and every other Saturday.

10. Beford worked long hours, many more than 40 hours per week, which was well known to Johnson, her immediate supervisor.

11. Johnson told Beford that she could only report a maximum of 40 hours per week, no matter how many hours she worked. Johnson knew Beford was working over 40 hours per week on a regular basis, because she told him so. Johnson knew from multiple telephone conversations with Beford from 2009 and into 2011 that she had to

work more than 40 hours a week to get all of the required work done at the Freightliner kitchen. Beford told Johnson that her co-workers in the Freightliner kitchen worked within the 40 hour per week maximum, but that she had to make up the difference, which required her to work a lot of overtime hours each week. She knew that her coworkers in the Freightliner kitchen were not working more than 40 hours a week because she was at work before and after them, and when she was out of the office, she had telephone conversations with them when they were leaving for the day. In addition, Johnson personally observed Beford at work in the Freightliner kitchen from time to time and talked to her while she was working in the Freightliner kitchen.

12. Plaintiff also told Johnson she had to stay late to serve regular Freightliner customers who worked late. In addition, Johnson required Plaintiff to come to work early to handle extra assignments from Johnson for other businesses run by Mangiafico, including ordering food and supplies and checking and storing the supplies as appropriate once they arrived.

13. When the contract between Freightliner and Defendant was changed to require the kitchen to be open on Saturday, only then did Defendant pay Plaintiff for those Saturday hours. However, Defendant still did not allow Plaintiff to submit or be paid for all the hours she worked each week.

14. While Beford worked for Defendant at the Freightliner kitchen, Defendant deducted from her pay any time she took off for personal purposes. Indeed, Defendant took deductions from Beford's pay in increments as small as a quarter of an hour.

15. Beford was not allowed to turn in a time card with overtime hours, except for the Saturday hours, which were required when the Freightliner contract was amended.

3

16. On March 8, 2011, Beford sent an email to Johnson about how much time she had to work off the clock to get her work done. The outstanding unpaid overtime remained an open issue throughout her assignment at the Freightliner kitchen. She discussed it with Johnson several times before March 8, 2011 and a couple of times after March 8, 2011, but he never offered a solution that allowed Beford to avoid working the overtime hours and he never paid Beford for the overtime hours she worked.

17. After the March 8, 2011 email, the food services at the Freightliner kitchen continued to meet or exceed budget. Upon information and belief, Defendant continues to provide food services at the Freightliner kitchen.

18. In April 2011, Margit Perullo, Senior Business Analyst, conducted an audit of Plaintiff's area and informed her that she was working many overtime hours for which she was not receiving compensation. Ms. Perullo told Plaintiff that her supervisor was looking to make Plaintiff's location a training center managed by Plaintiff, which would be a huge opportunity for Plaintiff, and to "hang in there."

19. During the week of June 14, 2011, Plaintiff asked Johnson in a face to face meeting in the kitchen about whether a promotion into a salaried exempt position would be made available to her, as originally promised, because she was working many more hours than what she was paid for.

20. In retaliation for Beford's continued complaints regarding the overtime issue and refusal to drop the issue, and to avoid paying her overtime, Johnson, upon information and belief, consulted with his supervisors, up to and including Mangiafico, and decided to terminate Beford's employment to avoid paying the unpaid wages and overtime monies properly due and owing to Plaintiff.

4

21. Accordingly, Defendant terminated Beford in August 2011, for pretextual and retaliatory reasons, although continuing work was available which she was willing to perform.

22. The total unpaid wages and overtime due to Beford at the time of her termination was approximately $19,561.68. Defendant has failed and refused to pay the unpaid wage and overtime compensation due and owing to Beford.

23. Beford has incurred lost wages and benefits from the date of her wrongful termination, and has not yet obtained a comparable job.

## COUNT ONE
### (North Carolina Wage and Hour Act – Unpaid Wages)

24. Plaintiff realleges and incorporates by reference the paragraphs above.

25. It is unlawful under North Carolina law for an employer to require or permit an employee to work without paying agreed wages and other compensation for all hours worked.

26. Defendant is an "employer" of Beford within the meaning of the North Carolina General Statutes, which states that an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee," §95-25.2(5).

27. Pursuant to N.C. Gen. Stat. §95-25.6, "every employer shall pay every employee all wages and tips accruing to the employee on the regular payday."

28. Pursuant to N.C. Gen. Stat. §95-25.13, Defendant was required to notify Beford of its "employment practices and policies with regard to promised wages" and of any changes in promised wages at least 24 hours prior to any such change, and to provide an itemized statement of deductions made from wages.

5

29. N.C. Gen. Stat. §95-25.7 requires that an employee whose employment is "discontinued" for any reason shall be paid all wages due on or before the next regular pay day.

30. Failure to pay all compensation due and owing to Beford by the next regular pay date after the cessation of her employment is a violation of the North Carolina Wage and Hour Act.

31. By requiring Beford to work "off the clock," Defendant has not paid Beford the full wages due to her for all hours worked on her termination date or at any time thereafter.

32. N.C. Gen. Stat. § 95-25.22 provides that any employer who violates the provisions of the wage payment laws of the State of North Carolina "shall be liable to the employee" for "unpaid overtime" and other compensation, interest at the legal rate from the date due until paid in full, double damages as "liquidated damages," and attorneys' fees.

33. As a result, Beford has been damages and is entitled to recover from Defendant all unpaid wages, interest, double damages, and attorneys' fees and costs, in an amount in excess of $10,000 to be proven at trial.

### COUNT TWO
(Fair Labor Standards Act – Unpaid Overtime)

34. Plaintiff realleges and incorporates by reference the paragraphs above.

35. Defendant is an "employer" in interstate commerce and/or in the production of "goods" for "commerce" within the meaning and definition of the Fair Labor Standards Act, 29 U.S.C. 203(d).

36. Pursuant to 29 U.S.C. 207(a), "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods

6

for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

37. Beford does not fit within any of the exemptions from overtime established under federal law because she performed the tasks of a skilled kitchen laborer.

38. Defendant has not paid Beford full overtime wages for the hours she worked in excess of 40 hours.

39. 29 U.S.C. 216(b) provides that any employer who violates the overtime provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages" plus attorneys' fees and costs.

40. As a result, Beford is entitled to recover from Defendant all unpaid overtime wages, interest, liquidated damages, and attorneys' fees and costs, in an amount in excess of $10,000 to be proven at trial.

## COUNT THREE
### (Wrongful Termination Violation of Public Policy)

41. Plaintiff realleges and incorporates by reference the paragraphs above.

42. Beford informed Defendant, through its managers Johnson and Mangiafico, that she was working off the clock to complete the kitchen work.

43. Beford requested pay for her time worked off the clock over forty hours per week and overtime pay for hours worked in excess of forty hours per week.

44. Plaintiff was lawfully allowed to ask for compensation in accordance with the North Carolina Wage and Hour Act.

7

45. Plaintiff refused to participate in conduct not allowed under the North Carolina Wage and Hour Act.

46. Effective August 12, 2011, Defendant terminated Beford in retaliation for requesting compensation in accordance with the North Carolina Wage and Hour Act and to avoid paying overtime monies properly due and owing to her.

47. Plaintiff's request for compensation in accordance with the North Carolina Wage and Hour Act and refusal to participate in conduct that violated the North Carolina Wage and Hour Act were substantial factors in Defendant's decision to terminate Beford.

48. As a result, Beford is entitled to recover from Defendant her damages in an amount in excess of $10,000 to be proven at trial, plus interest at the legal rate from date of breach until paid in full.

## COUNT FOUR
### (Fair Labor Standards Act - Retaliation)

49. Plaintiff realleges and incorporates by reference the paragraphs above.

50. Beford informed Defendant, through its managers Johnson and Mangiafico, that she was forced to work off the clock to complete the kitchen work.

51. Defendant accepted the benefit of Plaintiff's work but failed to ask her for all records of her time worked and failed to pay her for all time worked and all overtime worked in excess of forty hours each work week.

52. Defendant required Plaintiff to work off the clock and retaliated against her when she repeatedly stated that she was not getting paid for the many hours she was working.

53. Plaintiff was lawfully allowed to remind Defendant that she was not being fairly compensated.

54. Plaintiff refused to accept conduct not allowed under the Fair Labor Standards Act.

55. Effective August 12, 2011, Defendant terminated Beford in retaliation for continually requesting payment of her unpaid overtime hours and to avoid paying overtime monies properly due and owing to her under the Fair Labor Standards Act.

56. Plaintiff's repeated requests for compensation for all hours worked and her refusal to participate in conduct that violated the Fair Labor Standards Act were substantial factors in Defendant's decision to terminate Beford.

57. As a result, Beford is entitled to recover from Defendant her damages in an amount in excess of $10,000 to be proven at trial, plus interest at the legal rate from date of breach until paid in full.

## COUNT FIVE
(Conversion)

58. Plaintiff realleges and incorporates by reference the paragraphs above.

59. Defendant has failed and refused to pay Beford unpaid compensation in the amount of $19,561.68.

60. Beford had a right, title and interest in the unpaid compensation.

61. Defendant wrongfully retained the unpaid compensation for its own use and benefit and to the exclusion of Beford.

62. Defendant has wrongfully exerted dominion and control over the unpaid compensation and denied Beford her right, title, and interest in that pay.

63. Beford suffered damages in an amount in excess of $10,000 to be proven at trial.

9

## COUNT SIX
### (Unjust Enrichment)

64. Plaintiff realleges and incorporates by reference the paragraphs above.

65. Beford performed a service for Defendant as an employee in the Freightliner kitchen.

66. Beford's services as an employee for Defendant had value to Defendant.

67. At the time that Beford provided services for Defendant in the Freightliner kitchen, Beford reasonably expected payment for all of the wages and compensation due and owing to her.

68. At the time that Defendant received Beford's services in the Freightliner kitchen, Defendant knew or had reason to know that Beford expected to be paid and voluntarily accepted the services provided by Beford in the Freightliner kitchen.

69. Defendant financially benefited from the services provided by Beford and permitted Plaintiff to work without compensation for the benefit of Defendant.

70. The benefit to Defendant as a result of Beford's services in the Freightliner kitchen, for which she has not been fully and fairly compensated by Defendant, unjustly enriches Defendant at the exclusion and expense of Plaintiff.

71. Defendant's refusal to pay Plaintiff all monies due to her and its retention of those monies without justification or excuse, is willful and malicious.

72. As a proximate result, Beford has been damaged in an amount in excess of $10,000.00 to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court as follows:

1. Pursuant to Count I (North Carolina Wage and Hour), Plaintiff have and recover of the Defendant unpaid compensation in an amount to be determined at trial,

interest at the legal rate until paid in full, double damages, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. § 95-25.22;

2. Pursuant to Count II (Fair Labor Standards Act – Unpaid Overtime), Plaintiff have and recover from Defendant all unpaid overtime wages, interest, liquidated damages, and attorneys' fees and costs, in an amount in excess of $10,000 to be proven at trial;

3. Pursuant to Count III (Wrongful Termination), Plaintiff have and recover from Defendant damages in excess of $10,000.00 in an amount to be proven at trial;

4. Pursuant to Count IV (Fair Labor Standards Act – Retaliation), Plaintiff have and recover from Defendant, damages in excess of $10,000.00 in an amount to be proven at trial;

5. Pursuant to Count V (Conversion), Plaintiff have and recover from Defendant, damages in excess of $10,000.00 in an amount to be proven at trial;

6. Pursuant to Count VI (Unjust Enrichment), Plaintiff have and recover from Defendant, damages in excess of $10,000 in an amount to be proven at trial;

7. Plaintiff have and recover from Defendant her costs in this action;

8. This action be tried by jury; and

9. The Court grant such other and further relief as it deems just and proper.

//

Respectfully submitted, this the 12th day of March, 2012.

           MALONEY LAW & ASSOCIATES, PLLC

           */s/ Tamara L. Huckert*
           Margaret Behringer Maloney, N.C. Bar No. 13253
           Tamara L. Huckert, N.C. Bar No. 35348
           1824 East Seventh Street
           Charlotte, NC 28204
           mmaloney@maloneylegal.com
           thuckert@maloneylegal.com
           Telephone: 704-632-1622
           Facsimile: 704-632-1623
           *Attorneys for Plaintiff Jean-Marie Beford*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **AMENDED COMPLAINT** was served upon counsel of record via facsimile and by depositing a copy thereof in the U.S. mail, postage prepaid and addressed as follows:

> Susan Dion
> McGuire Woods LLP
> P.O. Box 31247
> Charlotte, NC 28231
> *Attorneys for Defendants*

This the 12th day of March 2012.

*Tamara L. Huckert* (signature)

Tamara L. Huckert

MALONEY LAW & ASSOCIATES, PLLC
1824 East 7th Street
Charlotte, NC 28204
Telephone: (704) 632-1622
Facsimile: (704) 632-1623